IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

       **Plaintiff/Respondent,**

 vs.                                                  **NO. 08 CV 479  RB/WDS**
                                                                **NO. 04 CR 852  RB**

**ALEJANDRO ESPINOZA, a/k/a**
**MIGUEL ANGEL MANZO**

       **Defendant/Petitioner**


**MAGISTRATE JUDGE'S PROPOSED**
**FINDINGS AND RECOMMENDED DISPOSITION[1]**

This is a Motion to Vacate, Set Aside, or Correct Sentence filed under 28 U.S.C. § 2255 by Alejandro Espinoza. (Document No. 1) Espinoza is acting *pro se*. Respondent filed a response in opposition to the motion. (Document No.12-2) The United States Magistrate Judge, having considered the arguments of the parties, the record, relevant law, and being otherwise fully advised, finds the Motion should be denied. Because the issues are resolved on the pleadings, and the record establishes conclusively that Lennon is not entitled to relief, an evidentiary hearing is not necessary. 28 U. S. C. §2255; *Trice v. Ward* 196, F. 3d 1151, 1159 (10th Cir. 1999), cert. denied, 531 U. S. 835 (2000). The court makes the following findings and recommended disposition.

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

**CLAIMS**

Espinoza claims that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution as a result of defense counsel's failure to adequately represent him during his criminal trial. Specifically, he asserts ineffective assistance of counsel in relation to defense counsel's alleged: (1) failure to allow Defendant to testify and his failure to present evidence on Defendant's behalf; (2) failure to investigate; and (3) admitting guilt during closing argument. Espinoza also claims ineffective assistance of appellate counsel for failing to raise the above issues. Lastly, Espinoza argues that the trial judge erred when he refused to allow Defendant to reopen his case at the conclusion of the trial. The Court notes that Espinoza does not deny that he conspired to sell drugs. Espinoza claims that he conspired to sell marijuana, not methamphetamine, and that therefore his sentence should have been significantly shorter.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 30, 2003, a Grant County Sheriff's Deputy, Paul Jasso, working undercover, purchased four ounces of methamphetamine for $2800.00 from Debra James at her home in Tyrone, New Mexico. On January 7, 2004, Jasso met with James again to negotiate the purchase of a pound of methamphetamine. James said that she had the methamphetamine available, but would have to get a price from "Miguel" her supplier. James instructed Jasso to call her later. On January 13, 2004 Jasso purchased one and one half pounds of methamphetamine. At the time of the purchase James was arrested. After her arrest James agreed to cooperate with authorities. She identified Miguel Manzo as her supplier. Agents later determined that Manzo was the Defendant Alejandro Espinoza. On January 14, 2004, James allowed agents to record a telephone conversations between her and Espinoza. Those tapes were played at trial and James testified that the conversation with the defendant, though sometimes in code, concerned the sale of methamphetamine and the

disposition of the proceeds of those sales. On February 3, 2004, at the direction of agents, James called the Defendant about money she owed him for the January 13 sale. James arranged to meet with Espinoza at a Wal-Mart in Silver City to collect payment. When Espinoza arrived at the Wal-Mart he was arrested.

On January 20-21, 2005, Espinoza was tried and convicted by a jury of conspiracy to possess with intent to distribute methamphetamine. On April 19, 2005, the District Court sentenced Espinoza to 240 months of imprisonment.

The defendant filed a timely notice of appeal on April 26, 2005. The Tenth Circuit Court of Appeals affirmed the conviction. The Supreme Court ultimately denied certiorari. Subsequently, the defendant timely filed the instant motion pursuant to 28 U.S.C. §2255 to vacate, set aside, or correct sentence.

## STANDARD OF REVIEW

Since Espinoza is in federal custody pursuant to the judgment of a federal court, 28 U.S.C. §2255 applies. A district court may grant relief under § 2255 only if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Petitioner's claim of ineffective assistance of counsel and his claim of judicial error, if proved, could constitute a denial or infringement of his constitutional rights.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's main allegations are correctly styled as an ineffective assistance of counsel claim. The merits of an ineffective counsel claim are squarely governed by *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). In *Strickland*, 466 U.S. at 686-87, the Supreme

Court devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel.  In order to establish an ineffective assistance claim, the petitioner must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced [his] defense."  *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999), cert. denied, 529 U.S. 1027 (2000).  To establish deficient performance, Espinoza must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment," *Williams v. Taylor*, 529 U.S. 362, 390, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000), quoting *Strickland*, 466 U.S. at 687; and that his legal "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  To establish prejudice, Espinoza "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

The prejudice component focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Williams*, 529 U.S. at 393, FN17, citing *Strickland* 466 U.S. at 687, and *Kimmelman v. Morrison*, 477 U.S. 365, 374, 393, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986); see also *Lockhart v. Fretwell*, 506 U.S. 364, 369, 122 L. Ed. 2d 180, 113 S. Ct. 838 (1993).  It is entirely appropriate for a habeas court to analyze the prejudice prong first and exclusively, if that is the easier course.  *E.g. Scoggin v. Kaiser*, 186 F.3d 1203, 1207 (10th Cir. 1999).

**A.  Failure to Allow Defendant to Testify**

Petitioner first alleges that his counsel refused to allow him to testify and to present evidence on his behalf.  At the end of the first day of trial, the prosecution rested.  The Court asked defense counsel if he expected to call any witnesses.  Counsel replied that he did not expect to call any

witnesses, but he would need to consult with his client before making a final decision. The next morning after making two motions for a mistrial, the defense rested without calling the petitioner to testify.

The Court and the parties then spent a lengthy period of time settling the jury instructions. During the review of the instructions, with the Defendant present, the Court referred to three separate instructions which needed to be changed or omitted because the Defendant did not testify. Defendant raised no objection to the Court at any time. When the jury was brought back in the Defendant interrupted the Court as it was addressing the jury and stated "You're going to give me life without the possibility of parole, and you're not going to allow my side to be heard." (Tr. p. 216 - p. 231) The Court instructed the Defendant to sit down, but the Defendant continued, stating "I have some issues that have to be preserved for appeal. This is my life we're talking about." The Court excused the jury as the Defendant continued his outburst.

After the jury was excused the Court warned Defendant that he would not tolerate any further outbursts. The Court instructed the Defendant to speak to his counsel about his concerns. At this point the Court questioned the defense counsel about his consultation with Espinoza on the decision not to testify. Defense counsel responded that he consulted with his client several weeks ago about testifying, that he had discussed the matter again the night before, and that they had again discussed it that very morning. The Court then took a recess to allow the Defendant and his counsel to meet. When the Court reconvened Espinoza presented a handwritten note outlining several of his concerns, which the Court admitted as Court Exhibit 1. None of the matters contained in Court Exhibit 1 makes any mention of Defendant wishing to testify or not being allowed to testify.

While Defendant has a clear right testify on his own behalf, the evidence does not support Defendant's claim that he was prevented from testifying. At the end of the government's case on

5

the late afternoon of January 20, the Court, with Defendant present, asked defense counsel if he was going to present any evidence the next morning. The answer was that he did not expect to, but that he need to consult with his client. The Defendant in no way objected or raised any question on this point. The next morning the defense counsel indicated he did not intend to present any evidence. Again, the Defendant raised no objection. During the settling of jury instructions the Court specifically mentioned the need to change the instructions since the Defendant did not testify. No objection was raised by Defendant. After the outburst and after consulting with counsel, Defendant himself prepared a list of matters that him, and that list did not include any reference to not being allowed to testify. See Court Exhibit 1. Defendant's claim concerning not being allowed to testify is without factual support or merit. His failure to testify was a tactical decision between Defendant and his counsel.

**B. Failure to Investigate and to Present Evidence.**

A second part Defendant's first claim and Defendant's second claim concern an alleged failure by defense counsel to properly investigate the charges and to present evidence on his behalf. As the Defendant concedes in his petition, the conspiracy alleged in the indictment actually existed, except that the illegal substance that was to be distributed was marijuana, not methamphetamine. Thus, he argues, he should have been subject to a less severe sentence. Specifically, the Defendant disputes that certain references to "white" and "gold" in the taped conversations with James were code for types of methamphetamine, rather he argues they were types of marijuana. Defendant claims that his counsel was ineffective in failing to put on evidence proving: that hydroponic lights to grow marijuana indoors were purchased in 2004 using credit cards; that some of the cash deposits James made into Defendant's accounts were from the sale of that marijuana and some from a truck that he rented out; that at the time of James' arrest she had "yellow cab" hydroponic marijuana in

her house; and that James had a close relationship to one Joey Moreno, a known methamphetamine dealer.

As Defendant notes in his petition, his counsel attempted to prove the defense theory without Defendant's testimony, and without the other extrinsic evidence identified by Defendant. However, the Defendant fails to identify how extrinsic evidence concerning these matters would have changed the outcome of the trial. Additionally, and more importantly, it is difficult to see how a foundation could have been laid for the introduction of the extrinsic evidence without Defendant's testimony. Defendant's counsel extensively cross examined the police officers and James about white and gold as types of marijuana and whether James was involved in selling marijuana. Deputy Sheriffs Tavizon and Jasso, both denied any knowledge of James selling marijuana. During cross examination James was extensively questioned about marijuana sales for Espinoza, which she denied.

The evidence about buying a growing light in January 2004, even if true, is of questionable value. Defendant makes no showing how evidence that he and James bought growing lights would be exculpatory for selling methamphetamine. Additionally, on cross examination James denied any knowledge of Defendant growing marijuana. For Defendant to have gotten this evidence before the jury *he* would have had to testify that the lights were purchased for growing marijuana, thereby exposing himself to cross examination on a multitude of issues. Another problem with this evidence is the timing of the alleged purchase of the lights. According to the receipt provided by Defendant, the alleged purchase was in late January 2004, *after* James had made her sales of methamphetamine to Jasso and *after* her arrest. Evidence of that purchase, even if true, has little to no relevance to actions that occurred in December 2003 and early January 2004.

Similarly, the alleged video of an arrest of Joey Moreno at a Wells Fargo parking lot in 2003,

at which time Defendant alleges James recovered Moreno's methamphetamine left at the scene, is of questionable value.  There was no evidence, other than Defendant's assertion, that Moreno was a methamphetamine dealer.  There was no evidence that James knew Moreno, and James specifically denied knowing Moreno on the stand.  A video of an arrest of Moreno, with nothing more, would prove nothing.  James admitted that she used cocaine, methamphetamine, and marijuana over a course of years and that she knew several suppliers of methamphetamine.  Thus some proof that James had another supplier would have minimal probative value, if any.

The issue of marijuana being found in James' apartment at the time of her arrest will be discussed below in connection with the denial of the motion to reopen.

All of the alleged failures to investigate are without merit.  Defense counsel knew about all of them as is evident in his cross examination of the various witnesses.  The real complaint is that counsel did not introduce extrinsic evidence.  As discussed above, the extrinsic evidence would have had little or no value in and of itself.   Without Defendant's testimony it is difficult to see how a foundation could have been laid for its introduction.  That Defendant did not testify was a tactical decision that does not constitute ineffective assistance of counsel if there were legitimate reasons for advising petitioner not to testify.  *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998) (counsel could have reasonably determined that harmful testimony elicited during witness' cross-examination would far outweigh the benefit of testimony elicited during direct examination). To prevail on this type of claim Petitioner must also show the requisite "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Rantz*, 862 F.2d 808, 811 (10th Cir.1988) (quoting *Strickland v. Washington*, 466 U.S. 668, 694), *cert. denied*, 489 U.S. 1089 (1989).  Petitioner has not made the requisite showing of either error or prejudice, and his argument is not well taken.

**C. Admission of Client's Guilt During Closing Argument.**

Defendant also alleges ineffective assistance based upon Defense Counsel admitting Defendant's guilt during closing argument. The admission by counsel of a client's guilt is the sort of breakdown in the adversarial process that would normally trigger a presumption of prejudice. *U. S. v. Williamson*, 53 F.3d 1500 (10th Cir. 1995). There are times, however, when a concession by defense counsel of some culpability on the part of a defendant is sound strategy, rather than ineffective assistance. See *Fowler v. Ward,* 254 F.3d 1235 (10th Cir. 2001). The record is clear in this case that the defense theory from the beginning was that Espinoza was engaging in conspiracy to sell drugs, but that the drug involved was not methamphetamine, but rather marijuana. Given the overwhelming evidence of the conspiracy to deal some illegal substance, to include taped conversations by the co-conspirators, including the Defendant, the defense was a reasonable strategic decision. This is even more evident given that the offense of conspiracy in this case is a specific intent crime requiring proof of a conspiracy to sell a particular illegal substance, to wit: methamphetamine. Under the instructions given by the Court, if the jury found reasonable doubt as to whether the drug was methamphetamine they would have had to acquit the Defendant.

Defense Counsel's argument (see Jury Instruc. Tr. Page 26) that the conversation in the tapes in this case could not just be referring to methamphetamine was in keeping with the defense theory. Even if his argument could have been clearer, he was not conceding guilt of the methamphetamine conspiracy. In no event was the argument prejudicial to the Defendant, as it supported his theory of the case.

**D. Ineffective Assistance of Appellate Counsel.**

Defendant concedes in his briefs that his claims against appellate counsel are the same as

9

against the trial defense counsel and he is merely preserving his record. The same arguments and standards apply to both counsel. Raising ineffective assistance of counsel claims are preferred on collateral attack rather than on direct appeal. Though not raised on direct appeal the government concedes they are not barred. For all the reasons set forth above the claims against appellate counsel are without merit.

**E. Conclusion**

To show his counsel was constitutionally deficient, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness. *Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995) (quoting *Strickland*, 466 U.S. at 688). A defense attorney is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. As noted above, the Court has reviewed the court record and the entire trial transcript and finds that defense counsel was prepared for trial, vigorously cross examined the prosecution's witnesses, had a clear understanding of the facts of the case, and had a cogent, coherent defense strategy. Additionally, the evidence in this case was so overwhelming that any potential error did not prejudice the Defendant.

## REFUSAL TO GRANT DEFENSE REQUEST TO REOPEN

A final claim cites error on the part of the Court in failing to allow the defense to reopen to call an impeachment witness. After the Defendant's outburst on the morning of the second day of trial and after defense counsel and Defendant returned to the courtroom after their meeting, the Court and counsel reviewed the Defendant's written concerns (Court Exhibit 1). Defense counsel stated that after a discussion with his client he was of the opinion that issue number four might have merit. Expanding on the notes of his client, counsel stated that marijuana was found in James' house when it was searched after her arrest. Counsel stated that it was his recollection that James had

testified that that there was no marijuana in her house at that time. Counsel further stated that Officer Lutonsky, who conducted the search would testify that he found marijuana. Based upon this proffer defense counsel moved to reopen and requested a continuance until the following Monday to present this impeachment evidence.

The Court denied the motion. The Court noted that the proffer was that a government agent found marijuana in James' home and that James had testified that there was no marijuana in her house. The Court correctly noted that James' testimony was that she did not believe that there was marijuana found in her house (Trial Tr. P. 164). The Court noted that testimony that some marijuana was found would not be a direct contradiction to the extent that it would constitute impeachment evidence. Additionally, the Court noted that James' had testified to significant prior drug use. The Court also noted the suspicious timing of the Defendant's outburst, after settling instructions without objections. The Court found that the timing was calculated, that it was designed to create an atmosphere of mistrial and that he was declining to reward the Defendant for his calculated outburst.

It should also be noted concerning the credibility of James that she admitted in her testimony that the officers searching her house missed a large quantity of methamphetamine hidden in a duct and that when she found the stash she returned that quantity to Espinoza and did not inform the police about it. Thus, any impeachment value as to James from the proffered evidence would have been cumulative and the failure to allow the defense to reopen would not have affected the outcome of the trial.

## DENIAL OF EVIDENTIARY HEARING

Petitioner has the burden of establishing the need for an evidentiary hearing. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) Under §2255, there is a right to an evidentiary

hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255; *see also, United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988) A hearing is not required when a defendant's allegations of fact supporting his or her claims are conclusory and unsupported by the record, are shown to be meritless, or are "affirmatively contradicted" by the files and record. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) An evidentiary hearing on a claim of ineffective assistance of counsel is required only if the factual allegations, if true, would meet both prongs of the *Strickland* test.

For the reasons stated above, the court finds that Petitioner has not made a colorable showing that his counsel was inadequate in any way, let alone that his performance fell below an objective standard of reasonableness. Furthermore, the Court finds that Petitioner's arguments were conclusory, meritless, or "affirmatively contradicted" by the record, as noted in the body of this opinion. Accordingly, he can meet neither prong of the *Strickland* test and an evidentiary hearing is not necessary.

## RECOMMENDED DISPOSITION

The court recommends that Espinoza's Motion Pursuant to 28 U. S. C. §2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody be DISMISSED with prejudice. Timely objections to the foregoing may be made pursuant to 28 U. S. C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendation with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendation. If no objections are filed, no appellate review will be allowed.

                                                                              **W. DANIEL SCHNEIDER**
                                                                              **United States Magistrate Judge**