IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        **Plaintiff/Respondent,**

 vs.                                               NO. 08 CV 479  RB/WDS
                                                          NO. 04 CR 852  RB

**ALEJANDRO ESPINOZA, a/k/a**
**MIGUEL ANGEL MANZO**

        **Defendant/Petitioner**


**MAGISTRATE JUDGE'S SUPPLEMENTAL**
**REPORT AND RECOMMENDATION[1]**

      This is a Motion to Vacate, Set Aside, or Correct Sentence filed under 28 U.S.C. § 2255 by Alejandro Espinoza.  (Document No. 1)  Espinoza is acting *pro se*.  On April 13, 2009 the Court filed its initial Report and Recommendation (Document No. 21) to which the Petitioner objected. (Document No. 23) The Report and Recommendation was adopted by the Honorable Robert C. Brack on June 8, 2009.  (Document No. 25) Petitioner filed a Motion to Alter or Amend Judgment on June 22, 2009.  (Document No. 27)  On September 30, 2009 the Court filed a second Report and Recommendation (Document No. 34) in response to the Motion to Alter or Amend, to which the Petitioner filed objections.  (Document No. 35)  The Report and Recommendation was adopted by the Honorable Robert C. Brack on December 2, 2009 (Document No. 39) and Petitioner's petition

---

[1]Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

was dismissed with prejudice. Petitioner appealed. Initially, the Tenth Circuit denied a certificate of appealability. (Document No. 47) Subsequently, the Tenth Circuit granted Petitioner's petition for rehearing as to his claim under *Brady v. Maryland*, 373 U.S. 83 (1963), finding that the district court did not rule on Petitioner's *Brady* claim, and remanding for a ruling on that claim in the first instance. (Document No. 47) This review addresses that claim.

The United States Magistrate Judge, having considered the arguments of the parties, the record, relevant law, and being otherwise fully advised, finds the Motion should be denied. Because the issues are resolved on the pleadings, and the record establishes conclusively that Petitioner is not entitled to relief, an evidentiary hearing is not necessary. 28 U. S. C. §2255; *Trice v. Ward* 196, F. 3d 1151, 1159 (10th Cir. 1999), cert. denied, 531 U. S. 835 (2000). The court makes the following findings and recommended disposition.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2003, a Grant County Sheriff's Deputy, Paul Jasso, working undercover, purchased four ounces of methamphetamine for $2800.00 from Debra James at her home in Tyrone, New Mexico. On January 7, 2004, Jasso met with James again to negotiate the purchase of a pound of methamphetamine. James said that she had the methamphetamine available, but would have to get a price from "Miguel" her supplier. James instructed Jasso to call her later. On January 13, 2004 Jasso purchased one and one half pounds of methamphetamine. At the time of the purchase James was arrested. After her arrest James agreed to cooperate with authorities. She identified Miguel Manzo as her supplier. Agents later determined that Manzo was the Defendant Alejandro Espinoza. On January 14, 2004, James allowed agents to record a telephone conversations between her and Espinoza. Those tapes were played at trial and James testified that the conversation with the defendant, though sometimes in code, concerned the sale of methamphetamine and the

disposition of the proceeds of those sales. On February 3, 2004, at the direction of agents, James called the Defendant about money she owed him for the January 13 sale. James arranged to meet with Espinoza at a Wal-Mart in Silver City to collect payment. When Espinoza arrived at the Wal-Mart he was arrested.

On January 20-21, 2005, Espinoza was tried and convicted by a jury of conspiracy to possess with intent to distribute methamphetamine. On April 19, 2005, the District Court sentenced Espinoza to 240 months of imprisonment.

The defendant filed a timely notice of appeal on April 26, 2005. The Tenth Circuit Court of Appeals affirmed the conviction. The Supreme Court ultimately denied certiorari. Subsequently, the defendant timely filed the instant motion pursuant to 28 U.S.C. §2255 to vacate, set aside, or correct sentence.

## STANDARD OF REVIEW

Since Espinoza is in federal custody pursuant to the judgment of a federal court, 28 U.S.C. §2255 applies. A district court may grant relief under § 2255 only if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. As noted above, the sole issue currently before the Court is Petitioner's *Brady* claim. In order to establish a *Brady* violation, Petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material in the sense that there is a reasonable probability that its disclosure would have resulted in a different outcome at trial. *Brady*, 373 U.S. 83, 87; *United States v. Combs*, 267 F.3d 1167, 1172 (10th Cir. 2001).

**ANALYSIS**

Petitioner's *Brady* claim arises from the following facts.  As noted above, Debra James was arrested on January 13, 2004 after selling methamphetamine to an undercover officer.  She agreed to cooperate with the authorities, and was put on conditions of release within days of her arrest.  On August 25, 2004 James took a drug test and tested positive for methamphetamine.  On October 4, 2004 the court conducted a show cause hearing on the alleged violation of conditions of release.  James testified at the hearing and denied using methamphetamine.  Pre-Trial Services reported that there had been no further violations and recommended that James remain on pre-trial release, which recommendation was accepted by the court.  The fact of the alleged positive drug test was not disclosed to Petitioner's defense counsel before the criminal trial.

James testified at trial and was questioned about her personal drug use.  James admitted being a "recreational" user of methamphetamine.  On direct examination she testified as follows:

> Q: Ms. James, have you used illegal narcotics in the past?
> A: Yes.
> Q: What types have you used?
> A: Cocaine and methamphetamine.
> Q: And do you have – did you use one more than the other as between methamphetamine and cocaine?
> A: I use methamphetamine more than I did cocaine.
> Q: Approximately when was the last time you ingested methamphetamine?
> A: January of last year.
> Q: And since that time, have you ingested any other types of narcotics, illegal narcotics?
> A: No, sir.
> Q: Not cocaine?
> A: No, sir.
> Q: Not marijuana?
> A: No, sir.
> Q: Would you, at any point in your life, consider yourself addicted to either cocaine or methamphetamine?
> A: No, I don't feel I was addicted.
> Q: How old (sic) did you start using methamphetamine, about what time period in your life?

    A:    Past – approximately 4 years ago.

Tr. 77-78 Document No. 131-1.

    Q:    Now, you indicated from your testimony that a year ago, you were taking methamphetamine pretty regularly. You called it "recreational."
    A:    Yes.
    Q:    Has that affected your memory, as far as you know?
    A:    As far as I know, no. I know I've heard reports that it can. I do work in a position at my job where it requires very much detail, and little or no errors are acceptable on State paperwork and financials.
    Q:    And you have no trouble at work?
    A:    No, I don't.

Tr. 139, Document No. 131-2

    On cross-examination James testified as follows regarding her personal drug use:

    Q:    I believe you have testified that you had never used marijuana; is that correct?
    A:    No, I don't believe I said I didn't use marijuana. I have not used marijuana in the past 10 years.
    Q:    So you have used marijuana and you have used cocaine, I would presume?
    A:    Yes, sir.
    Q:    But after trying meth, meth became your drug of choice; is that correct?
    A:    Correct.
    Q:    Okay. And when was the last time that you injected meth?
    A:    I never did inject methamphetamines.
    Q:    How did you take methamphetamine?
    A:    I smoked it.
    Q:    And when was the last time you smoked meth?
    A:    Just before my arrest, the day of the arrest.
    Q:    And when you say "arrest," what date are you referring to?
    A:    January 13th, 2004.
    Q:    And you're testifying that you have not used any meth since January the 13th?
    A:    Yes, sir.
    Q:    Prior – in the year prior to your arrest on the 13th, let's say, on January the 13th, let's say, in the year of 2003, how often did you use meth?
    A:    I would say at the most, once, twice a month for a weekend.

Tr. 148-149, Document No. 131-2.

Under the three part Brady test, a constitutional violation occurs if (1) the government suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was

material.  In the Respondent's brief the government essentially concedes the first point, does not address the second point, and argues the third point–materiality.  Petitioner also stresses the materiality factor, arguing that impeachment of James on this point would have discredited her entire testimony, and, since she was the prime witness against him, the impeachment would likely have resulted in a different outcome at trial.

Because the Respondent has conceded the first part of the Brady test, the Court will not address it.  At the second step, it is not readily apparent to the Court that the suppressed evidence was favorable to the defendant.  The government's case against Petitioner did not hinge on the fact that James had never again used methamphetamine after being arrested.  There was no judicial determination that she had used methamphetamine, only a positive drug test result, and James' denial of use.  All other drug screens that James underwent that year were negative.  Had the evidence been disclosed by the government, and had James testified as she did on direct examination, defense counsel could have confronted her with the fact that her August 25, 2004 drug screen was positive for methamphetamine.  In the Court's opinion James would have denied using methamphetamine and asserted that the test result was wrong, as she did at the show cause hearing. Further, given that testimony, in the Court's opinion the trial judge would not have permitted what would essentially have been a trial within a trial to determine whether James had actually used methamphetamine on one occasion in the year following her arrest, and six months before Petitioner's trial.  However, it is true that if the jury believed that James used methamphetamine prior to the August test, and denied it, the suppressed evidence could have some impeachment value, and in that sense could be considered somewhat favorable to the Defendant.

The third part of the test concerns the materiality of the suppressed evidence, and whether there is a reasonable probability that its disclosure would  have resulted in a different outcome at

6

trial. In the Court's opinion the suppressed evidence was not material. First, as noted above, it is likely that James, confronted at Petitioner's trial with the fact of the positive drug test, would have simply denied that she used drugs, and claimed that the test was inaccurate. There would have been no resolution of whether the test was accurate or not, and in the Court's opinion, even if the jurors suspected that James had used drugs on that one occasion, the impeachment value would have been negligible. The theory of the defense had nothing to do with whether James had continued to use drugs or not. The theory of defense was that James was protecting her true supplier and blaming Petitioner instead. There was substantial evidence, in the form of recorded telephone calls and records of bank deposits, that rebutted the theory of the defense.

There was some discussion with James about whether her memory suffered from her past drug use. There was no evidence that it did, and, as noted above, evidence such as the recorded telephone calls and bank account documentation did not depend on James' memory. Furthermore, the suppressed evidence, at best, was evidence that James had used methamphetamine shortly before the August 2004 drug test. Her other tests were negative, indicating that her drug use, if any, between her arrest and her testimony at Petitioner's trial was very minimal.

The Court has also considered whether disclosure of the evidence in question might have opened up another theory of defense that the jury could have found more persuasive. Again, even if there had been a stipulation that James used drugs once in August 2004, instead of just the positive test result, it is difficult for the Court to imagine how that stipulation could have been used as a basis for a new defense, particularly in light of James' testimony about her not inconsiderable drug use before her arrest. Finally, even if the evidence had been disclosed, and James had been cross examined on her one positive drug test, and the jury had believed that she used methamphetamine in August 2004, in the Court's opinion the impeachment value of the evidence would not rise to the

level necessary for a successful *Brady* claim.  The fact that an admitted drug user would minimize, or lie about the extent of her drug use is not that surprising, and, as noted above, the heart of James' testimony was corroborated by recorded conversations and bank account documentation.  The Court recommends that Petitioner's claim for relief on *Brady* grounds be denied.

## DENIAL OF EVIDENTIARY HEARING

Petitioner has the burden of establishing the need for an evidentiary hearing.  *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984)  Under §2255, there is a right to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. §2255;  *see also, United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988)  A hearing is not required when a defendant's allegations of fact supporting his or her claims are conclusory and unsupported by the record, are shown to be meritless, or are "affirmatively contradicted" by the files and record.  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)  For the reasons stated above, the court finds that Petitioner has not made a colorable showing of a *Brady* violation such that an evidentiary hearing is necessary.

## RECOMMENDED DISPOSITION

The court recommends that the *Brady* claim within Espinoza's Motion Pursuant to 28 U. S. C. §2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody be DENIED.  Timely objections to the foregoing may be made pursuant to 28 U. S. C. § 636(b)(1)(C).  Within fourteen days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendation with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the fourteen day period allowed if that party wants to have appellate review of the proposed findings and recommendation. If no

objections are filed, no appellate review will be allowed.

**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**